# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENERAL DATACOMM INDUSTRIES, | ) | Case No. 01-11101 (PJW) |
| INC., et al., | ) | |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Objections Due By: November 30, 2001 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: Only if timely objections are filed.** |

### APPLICATION FOR ORDER PURUSANT TO SECTION 327 OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE EMPLOYMENT AND RETENTION OF RAS MANAGEMENT ADVISORS, INC AS WORKOUT AND CRISIS MANAGEMENT CONSULTANTS FOR THE DEBTORS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in these chapter 11 cases, hereby request the entry of an order granting their application to employ and retain RAS Management Advisors, Inc. ("RAS") as workout and crisis management consultants (the "Application"), pursuant to section 327 under chapter 11 of title 11, United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") effective as of the Petition Date (as defined below). In support thereof, the Debtors respectfully submit the following:

### Jurisdiction

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases, and this Application within this District, is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

## Background

2.  On November 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

3.  The Debtors continue in possession of their properties and the management of their businesses as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.  No trustee, examiner or creditors committee have been appointed in these chapter 11 cases.

5.  GDC is a Delaware corporation that is the parent company for numerous wholly-owned subsidiaries, including General DataComm, Inc., DataComm Leasing Corporation, DataComm Rental Corporation, GDC Federal Systems, Inc., GDC Naugatuck, Inc., GDC Holdings Company, LLC, General DataComm International Corporation, General DataComm China, Limited, and GDC Realty, Inc.

6.  The Debtors are worldwide providers of wide area networking and telecommunications products and services. GDC designs, assembles, markets, installs, and maintains products and services that enable telecommunications common carriers, corporations and governments to build, upgrade and better manage their global telecommunications networks.

7.  The Debtors' books currently reflect assets and liabilities of approximately $64.0 million and $94.0 million, respectively (adjusted to reflect certain assets sales consummated in the third calendar quarter of 2001). The Debtors have reported continuing net losses from 1995 to date, due to general economic and industry slowdown, technology changes, and high investments in product development.

## Relief Requested

8.  By this Application, the Debtors seek entry of an order, pursuant to section 327(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules, authorizing them to employ and retain RAS as workout and crisis management consultants for the Debtors during these chapter 11 cases effective as of the Petition Date.

**A.  Nature of Services**

9.  RAS is a crisis management and turnaround firm of independent professional consultants with specialties in finance, manufacturing, distribution, marketing, and general management. RAS specializes in managing turnarounds and companies in chapter 11 and negotiating transactions, including: arranging for new financing or equity, selling excess assets or arranging for a sale of the company. RAS frequently performs due diligence reviews for financial institutions prior to new loan commitments being made.

10. The Debtors request that RAS serve as independent workout and crisis management consultants to the Debtors during these chapter 11 cases to perform independent consulting services on behalf of the Debtors, as more fully set forth in the engagement letter dated November 2, 2001, attached hereto as Exhibit "A". A summary of the services to be performed are as follows:

(a) Review and develop GDC's debtor in possession or cash collateral budget, revenue, and cash flow projections;

(b) Review all other financial and accounting information, records and systems;

(c) Assist GDC in connection with any sale process or potential investment by third parties;

(d) Communicate and negotiate in connection with, and report to, GDC's significant creditors, including without limitation, trade creditors and

> banks (including lenders under any debtor in possession credit arrangement); and
>
> (e) Assist GDC in complying with the requirements of the Bankruptcy Code, including developing and implementing a Plan of Reorganization.

11. The Debtors' believe that RAS is well qualified and able to provide the foregoing services to the Debtors' in a cost-effective, efficient, and timely manner. RAS has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of this Court.

**B.  Disinterestedness of RAS**

12. To the best of the Debtors' knowledge, and except as disclosed herein and in the Affidavit of Richard A. Sebastiao, the President of RAS (hereinafter "Sebastiao Affidavit"), annexed hereto as Exhibit "B", RAS has not represented the Debtors, their creditors, equity security holders, or any other parties-in-interest, or their respective attorneys and accountants, the United States Trustee or any other person employed in the office of the United States Trustee, in any matter relating to the Debtors or their estates.

13. To the best of the Debtors' knowledge, other than as set forth in the Sebastiao Affidavit, the principles and professionals of RAS do not have any connection with the Debtors, their creditors, or any other party-in-interest, and do not hold or represent an interest adverse to the estate, and are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code. The Debtors submit that the employment of RAS would be in the best interest of the Debtors, their estates and creditors

C.  **Professional Compensation**

14. RAS will calculate its fees based on the time required to complete the assignment, plus all reasonable and necessary travel, related and other out-of-pocket costs incurred.

15. For services rendered to the Debtors, RAS proposes to charge its standard hourly rates for such services, plus reimbursement for all reasonable out-of-pocket expenses, subject to this Court's approval. The current hourly rates to be charged by RAS in connection with this matter for any staff are as follows:

|     |                   | Hourly | Daily[1] |
|-----|-------------------|--------|----------|
| (a) | Richard Sebastiao | $300   | $3,000   |
| (b) | Robert Tetreault  | $180   | $1,800   |
| (c) | Phillip Stetson   | $180   | $1,800   |
| (d) | Clerical          | $30    |          |

16. Effective January 1, 2002, RAS's Daily Rates will be as follows: Richard Sebastiao ($3,500), Robert Tetreault ($2,200), Phillip Stetson ($2,200), with a pro rata adjustment to the Hourly Rates.

17. Time incurred by other staff, if necessary, will be billed at the hourly rates in effect at the time of service performance. The hourly rates set forth above are subject to periodic increases in the normal course of RAS business, often due to the increased experience of a particular professional.

---

[1] Daily rates are charged for days where work is performed away from RAS's office for 6-12 hours per day. Hours in excess of 12 hours per day and hours spent working at RAS's offices are charged at hourly rates.

18. The Debtors understand the RAS intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases. The Debtors, subject to the Court's approval, propose to pay RAS its customary hourly rates as in effect from time to time and to reimburse RAS for expenses in accordance with RAS customary reimbursement policies.

19. RAS will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services and will file all appropriate applications for allowances of compensation and expenses with the Court in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and Orders of the Court.

20. RAS has received $130,000 in connection with its initial consultation and proposed consulting services for the Debtors. A part of this payment has been applied to outstanding balances and to payment of the Debtors' initial fees; the remainder will be applied to postpetition services and expenses.

21. Other than as set forth above and in the Sebastiao Affidavit, there is no proposed arrangement between Debtors and RAS for compensation.

## Notice

22. Notice of this Application has been given to: (i) the Office of the United States Trustee, (ii) the Debtors' 20 largest unsecured creditors, and (iii) the Debtors' prepetition lenders.

## No Prior Request

23. No previous motion or application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order authorizing the Debtors to employ and retain RAS as their accountants pursuant to the terms described above, and granting the Debtors such other and further relief as is just and proper.

Dated: November 15, 2001

GENERAL DATACOMM INDUSTRIES, INC.,
GENERAL DATACOMM, INC.,
DATACOMM LEASING CORPORATION,
DATACOMM RENTAL CORPORATION,
GDC FEDERAL SYSTEMS, INC.,
GDC NAUGATUCK, INC.,
GDC HOLDINGS COMPANY, LLC,
GENERAL DATACOMM INTERNATIONAL CORPORATION,
GENERAL DATACOMM CHINA, LIMITED,
GDC REALTY, INC.

By: /s/ William Henry
William Henry,
Chief Financial Officer

# EXHIBIT A



MANAGEMENT ADVISORS, INC.

November 2, 2001

Mr. Charles P. Johnson
Chairman and CEO
General DataComm Industries, Inc.
199 Park Road Extension
P.O. Box 1299
Middlebury, CT 06762-1299

Dear Chuck:

This letter is to confirm our engagement by General DataComm Industries, Inc., "the Company", to perform the tasks outlined below in conjunction with its Chapter 11 filing and planned restructuring.

**ASSIGNMENT**

Our firm is being engaged to assist the Company in dealing with its financial crisis, including without limitation (i) reviewing and assisting the Company in developing the Company's DIP or cash collateral budget, revenue and cash flow projections and all other financial and accounting information, records and systems, (ii) assisting the Company in connection with any sale process or potential investment by third parties, (iii) assisting in negotiating with, and reporting to, the Company's significant creditors, including without limitation, trade creditors and banks (including lenders under any debtor-in-possession credit arrangement), (iv) assisting the Company in complying with the requirements of the Bankruptcy Code and (v) assisting the Company in developing and implementing a Plan of Reorganization. We will report to William Henry, Vice President Finance and CFO.

**CONFIDENTIALITY**

You have instructed RAS Management Advisors, Inc. and our firm agrees, that this engagement and all information obtained by it or its representatives concerning the business and operations of the Company is confidential and will be held in the strictest of confidence except that we may freely respond to such creditor constituencies described above as it relates to the results of operations and the compliance with the appropriate budgets.

**INDEMNIFICATION**

The Company agrees to indemnify and hold harmless, RAS Management Advisors, Inc., its employees, directors, officers, and agents, jointly and severally, from any and all claims whatsoever that may be made against any or all of them, arising from the performance of their duties described in this letter and as modified from time to time in the future. Claims, as used in this agreement, shall include, without limitation, all reasonable attorney's fees and reasonable legal expenses incurred by RAS Management Advisors, Inc., unless any such claim is determined by a court of competent jurisdiction, to have resulted from the gross negligence of RAS Management Advisors, Inc., its employees, officers, directors or agents.

## FEES

We require an additional $130,000 retainer by wire transfer prior to any chapter 11 filing and will offset our final billings against that amount upon approval by the court. We will remit any remaining balance to you at the end of this assignment. The Company is free to terminate our services at any time, at which point we would offset all unpaid invoices and unbilled time and expenses against the retainer and return any unused portion to the Company, subject to court approval.

We will supply copies of our weekly invoices to the Company, the U. S. Trustee, the secured lenders and the Creditors' Committee for their review.

Our fees will be billed in daily and hourly increments and not in tenths of an hour. Due to the nature of our assignment it is not practical or cost effective to detail our invoices in any other manner. Any disputes must be brought to our attention within 5 days of receipt of the invoice to be valid.

We will bill for our services, plus out of pocket expenses, on a weekly basis. All invoices are due upon presentation, by wire transfer, unless otherwise ordered by the court.

Our rates are as follows through December 31, 2001:

|                    | Daily   | Hourly |
|--------------------|---------|--------|
| Richard Sebastiao  | $3,000  | $300   |
| Robert Tetreault   | $1,800  | $180   |
| Phillip Stetson    | $1,800  | $180   |
| Clerical           |         | $ 30   |

Our daily rates effective January 1, 2002 will be: Sebastiao ($3,500), Tetreault ($2,200) and Stetson ($2,200) with a pro rata adjustment to the hourly rates.

We expect to staff this assignment as described above, but reserve the right to substitute other comparable personnel at our discretion.

Daily rates are charged for days where work is performed away from our offices for 6-12 hours per day. Hours in excess of 12 hours per day and hours spent working at our own offices are charged at the hourly rates. Travel will be charged at no greater than 50% of the above rates.

Out of pocket expenses will be billed in addition to the above fees and will include airfares, hotel, meals, mileage, parking, car rentals, photocopying and other incidentals as well as any attorney fees incurred (none are expected) related to this assignment.

Please indicate your agreement with the contents of this letter by signing and returning the enclosed copy of this letter.

Thank you for selecting us for this assignment.

Very truly yours,
RAS Management Advisors, Inc.

Richard A. Sebastiao
President

**Agreed:**
General DataComm Industries, Inc.

BY: _____

Name: Charles P. Johnson    Date: _____
Title: Chairman and CEO

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENERAL DATACOMM INDUSTRIES, INC., et al., | ) ) ) | Case No. 01-11101 (PJW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |

**AFFIDAVIT OF RICHARD A. SEBASTIAO, IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTION 327 OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING EMPLOYMENT AND RETENTION OF RAS MANAGEMENT ADVISORS, INC. AS WORKOUT AND CRISIS MANAGEMENT CONSULTANTS FOR THE DEBTORS**

I, Richard A. Sebastiao, hereby declare:

1. I am the President of RAS Management Advisors, Inc. ("RAS"), a workout and crisis management consulting firm with its principal offices in Newport, Rhode Island. I am duly authorized to make this affidavit on behalf of RAS and submit this affidavit in accordance with section 329 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a), 2016(b) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in connection with the application (the "Application") of the above-captioned debtors and debtors-in-possession (the "Debtors") for an order pursuant to section 327(a) of the Bankruptcy Code authorizing the Debtors to employ and retain RAS as independent consultants.

2. Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.[1] Unless otherwise

---

[1] Certain of the disclosures set forth herein relate to matters within the knowledge of other professionals at RAS Management Advisors, Inc. and are based on information provided by them.

capitalized terms and phrases not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

## A. Services to be Performed by RAS Management Advisors, Inc.

3. The Debtors have requested that RAS serve as workout and crisis management consultants to the Debtors during these chapter 11 cases to perform advisory services on behalf of the Debtors, including the following:

> (a) Review and develop General DataComm Industries, Inc.'s ("GDC") debtor in possession or cash collateral budget, revenue, and cash flow projections;
>
> (b) Review all other financial and accounting information, records and systems;
>
> (c) Assist GDC in connection with any sale process or potential investment by third parties;
>
> (d) Communicate and negotiate in connection with, and report to, GDC's significant creditors, including without limitation, trade creditors and banks (including lenders under any debtor in possession credit arrangement); and
>
> (e) Assist GDC in complying with the requirements of the Bankruptcy Code, including developing and implementing a Plan of Reorganization.

4. Subject to the Court's approval of the Application, RAS is willing to serve as the Debtors' independent financial advisors provide the services described above and in the attached engagement letter.

B.  **Disinterestedness of Professionals**

5. In connection with its retention by the Debtors, RAS researched its client database for the last twenty-four (24) months to determine whether it had any relationships with the following entities:

(a) The Debtors and their affiliates;

(b) The Debtors' officers and directors;

(c) The Debtors' secured lenders;

(d) The Debtors' largest unsecured creditors;

(e) TheDebtors' landlords;

(f) The Debtors' major customers;

(g) The Debtors' proposed professionals;

(h) The United States Trustee; and

(i) Certain other parties in interest reasonably ascertainable by RAS.

6. A list of the names of each of the entities with which RAS has a relationship is annexed hereto as Exhibit "A" and incorporated herein.

7. Except as may be otherwise set forth herein, to the best of my knowledge, RAS, its principals and professionals (i) do not have any connection with the Debtors or their affiliates, their creditors, or any other party in interests, except as described in this affidavit (ii) are "disinterested persons" under section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and (iii) do not hold or represent any interest adverse to the Debtors' estates. RAS does

not and has not represented any entity, other than the Debtors, in matters related to these chapter 11 cases.

        8. The Debtors have numerous creditors and relationships with various individuals and entities that may be parties in interest in these cases. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict, including the efforts outlined above, RAS is unable to state with certainty whether one of its clients or an affiliated entity holds a claim or otherwise is a party in interest in these chapter 11 cases except as described in this paragraph. RAS is presently engaged as the financial advisor to a group of lenders in one non-chapter 11 case where Ableco Finance LLC, or one of its affiliates, is a member lender. RAS' fees in that case are less than 3% of its overall fees for the nine months ended September 30, 2001. If RAS discovers any information that is contrary to or pertinent to the statements made herein, RAS promptly will disclose such information to the Court on notice to creditors, the Committee, the Debtors and the United States Trustee.

        9. RAS does not advise, has not advised, and will not advise any entity, other than the Debtors, in matters related to these chapter 11 cases.

C. **Terms of Engagement**

10. The terms of the RAS engagement are set forth in the Application and in the attached engagement letter. As set forth in the Application, RAS will bill the Debtors based on the following daily and hourly rates:

|  | Hourly | Daily[2] |
|---|---|---|
| (a) Richard Sebastiao | $300 | $3,000 |
| (b) Robert Tetreault | $180 | $1,800 |
| (c) Phillip Stetson | $180 | $1,800 |
| (d) Clerical | $30 | |

11. Effective January 1, 2002, RAS's Daily Rates will be as follows: Richard Sebastiao ($3,500), Robert Tetreault ($2,200), Phillip Stetson ($2,200), with a pro rata adjustment to the Hourly Rates.

12. The hourly rates set forth above are RAS's standard hourly rates for work of this nature. These hourly rates are set at a level designed to compensate RAS fairly for the work of its professionals and to cover the fixed and routine overhead expenses. RAS will bill the Debtors for actual, reasonable and necessary charges and disbursements incurred in the rendition of services. Such charges and disbursements include, but are not limited to, travel expenses, business meals, duplicating charges, messenger services, long distance telephone calls and other reasonable out-of-pocket expenses.

13. RAS intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these

chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Orders of this Court. RAS will seek compensation for the services of each professional acting on behalf of the Debtors in these cases at the then-current rate charged for such services on a non-bankruptcy matter. The current standard daily and hourly rates for RAS professionals are set forth above.

14. Other than as set forth above, no arrangement is proposed between the Debtors and RAS for compensation to be paid in these cases.

15. Prior to the chapter 11 filing the Debtors paid RAS a total of $150,000 in retainers and RAS has been paid a total of $252,628 ($238,380 in fees and $14,248 in expenses) prepetition. Unpaid invoices have been offset to the retainers resulting in a prepetition retainer balance of $133,756.

Under penalty or perjury, I declare that the foregoing is true and correct.

Dated: _December 7_, 2001

_____
Richard A. Sebastiao, President
RAS Management Advisors, Inc.
599 Ocean Avenue
Newport, Rhode Island
Telephone: (401) 846-5990
Facsimile: (401) 846-5989

Sworn to and subscribed before
me this ___ day of _____, 2001.

_____
Notary Public
My Commission Expires: _____

---

[2] Daily rates are charged for days where work is performed away from RAS's office for 6-12 hours per day. Hours in excess of 12 hours per day and hours spent working at RAS's offices are charged at hourly rates.

WP3:698109.1  58868.1001

# EXHIBIT A

Ableco Finance LLC (Cerberus) as described in paragraph 8 of the affidavit.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GENERAL DATACOMM INDUSTRIES, INC., et al., | ) ) ) | Case No. 01-11101 (PJW) |
| | ) ) | (Jointly Administered) |
| Debtors. | ) ) | |

## ORDER PURUSANT TO SECTION 327 OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE EMPLOYMENT AND RETENTION OF RAS MANAGEMENT ADVISORS, INC AS WORKOUT AND CRISIS MANAGEMENT CONSULTANTS FOR THE DEBTORS

Upon consideration of the above-captioned debtors and debtors in possession (the "Debtors") Application for Employment and Retention of RAS Management Advisors, Inc. ("RAS") as workout and crisis management consultants for the Debtors (the "Application"), made pursuant to section 327 under chapter 11 of title 11, United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and upon consideration of the Affidavit of Richard A. Sebastiao, the President of RAS, in support thereof (the "Sebastiao Affidavit"); and the Court being satisfied based on the representations made in the Application and Sebastiao Affidavit that said consulting firm represents no interest adverse to the Debtors' estate with respect to the matters upon which they are to be engaged, and that their employment is necessary and in the best interest of the creditors of the Debtors' estates; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Application is granted; and it is further

ORDERED that, in accordance with section 327 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules, the Debtors are authorized to employ and retain RAS as their workout and crisis management consultants on the terms set forth in the Application and the Sebastiao Affidavit, effective as of November 2, 2001; and it is further

ORDERED, that RAS shall be entitled to allowance of compensation and reimbursement of expenses, upon the filing and approval of the interim and final applications pursuant to the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and such other Orders as the Court may direct.

Dated: Wilmington, Delaware
November ____, 2001

                                                    Peter J. Walsh
                                                    Chief United States Bankruptcy Judge